UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA TO<br>JEFFREY GOLDBERG | Misc. Action No. 10-115 (RWR/JMF) |
| MOSHE SAPERSTEIN et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE PALESTINIAN AUTHORITY et al.,<br><br>    Defendants. | |

**MEMORANDUM OPINION**

Currently pending and ready for resolution is Non-Party Jeffrey Goldberg's Motion to Quash Subpoena and/or for a Protective Order [#1] ("Motion to Quash"). For the reasons stated below, the motion will be granted.

**BACKGROUND**

In 2004, Moshe Saperstein filed suit against the Palestinian Authority ("PA") in the Southern District of Florida. Defendants' Opposition to Non-Party Jeffrey Goldberg's Motion to Quash Subpoena and Response to Jeffrey Goldberg's Motion for Protective Order [#3] ("Defs. Opp."). Saperstein claimed that, pursuant to the Antiterrorism Act, 18 U.S.C. § 2333(a),[1] the PA

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

was liable for injuries he suffered on February 18, 2002, during an attack that occurred in the Gaza Strip. Id. at 1-2.

On February 2, 2010, defendants subpoenaed non-party Jeffrey Goldberg to appear for a deposition on February 18, 2010. Motion to Quash at 2. Goldberg, a journalist based in Washington, D.C., had included an account of the attack on Saperstein in a magazine article[2] as well as in a book.[3] In response to the subpoena, Goldberg filed the Motion to Quash.

## DISCUSSION

I. <u>Legal Standards</u>

Resolution of the current motion is governed by two rules. Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). If, however, the discovery sought, in this case through a subpoena to a third party, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [ ] subjects a person to undue burden,"[4] the third party may move to quash the subpoena under Rule 45 of the Federal Rules of Civil Procedure.

II. <u>The Reporter's or Journalist's Privilege</u>

Goldberg claims protection pursuant to a journalist's or reporter's privilege under the First Amendment. Motion to Quash at 5-7. Citing cases from the D.C. Circuit and this Court, Goldberg argues that "the privilege protects not only against the compelled disclosure of

---

[2] See Motion to Quash at Attachment 2.

[3] Id. at Attachment 3.

[4] Fed. R. Civ. P. 45(c)(3).

journalist's confidential sources, but also unpublished journalists work product, including a reporter's notebooks, diaries, accounts of nonconfidential but unpublished interviews, and other unpublished material generated in the course of the editorial process." Id. at 6.

Defendants answer Goldberg's claims with several theories. First, defendants argue that Goldberg's testimony is not privileged since defendants only seek nonconfidential information. Defs. Opp. at 12. Second, defendants argue that recent Circuit opinions have either held that even confidential information is not protected or questioned the protection of confidential materials. Id. at 12-14. Third, defendants argue that even if there does exist such a privilege, Goldberg's testimony is not protected because 1) not all of the information sought was obtained for the purpose of public dissemination, 2) the information sought is of likely relevance to a significant issue, 3) the information sought cannot reasonably be obtained from another source. Id. at 15-23.

A. Under the First Amendment

In the seminal case of Branzburg v. Hayes, 408 U.S. 665 (1972), the Supreme Court held unequivocally that the First Amendment was not the source of an absolute testimonial privilege for reporters:

> Until now the only testimonial privilege for unofficial witnesses that is rooted in the Federal Constitution is the Fifth Amendment privilege against self-incrimination. We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do.

Id. at 689.

Speaking in the context of grand jury proceedings, the Court further stated:

3

> On the record now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

Id. at 690-91.

Interpreting the Supreme Court's holding in Branzburg, the D.C. Circuit expanded its understanding of the breadth of the privilege to include civil as well as criminal proceedings. In Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981), the court stated the following: "Although Branzburg may limit the scope of a reporter's First Amendment privilege in criminal proceedings, this circuit has previously held that in civil cases, where the public interest in effective law enforcement is absent, that case is not controlling." Id. at 711 (citing Carey v. Hume, 492 F.2d 631, 636 (D.C. Cir.), cert. dismissed, 417 U.S. 938 (1974)). Writing in the context of compelled confidential source information, the court further noted:

> In general, when striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, we will be mindful of the preferred position of the First Amendment and the importance of a vigorous press. Efforts will be taken to minimize impingement upon the reporter's ability to gather news . . . Thus, in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege.

Zerilli, 656 F.2d at 713. Accord In the Matter of an Application to Enforce Administrative Subpoena of the U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., 507 F. Supp. 2d 45, 51 (D.D.C. 2007) ("By contrast, in civil cases, the privilege typically prevails because any interest in overcoming the privilege is by definition a private rather than a public interest.").

The court then articulated a three-part test to determine the appropriate balance between the litigant's interest in the information and the public's interest in protecting a reporter's First Amendment privilege. First, the court must determine whether the information sought is central to the litigant's case. Id. at 713. Second, the court must determine whether the litigant has exhausted alternative sources of information. Id. Accord Clyburn v. News World Commc'ns, Inc., 903 F.3d 29 (D.C. Cir. 1990) ("But the reporter's privilege is a qualified one. If the plaintiff exhausts all reasonable alternative means of identifying the source, the privilege may yield."); Lee v. Dep't of Justice, 401 F. Supp. 2d 123, 132 (D.D.C. 2005), appeal dismissed, 2006 U.S. App. LEXIS 15208 (D.C. Cir. June 16, 2006) ("The reporter must answer questions for information (1) that is "central" to the plaintiff's case and (2) as to which the plaintiff has exercised all reasonable alternatives to obtain elsewhere."). Third, the court must draw a distinction between civil cases in which the reporter is a party and ones in which the reporter is not: "When the journalist is a party, and successful assertion of the privilege will effectively shield him from liability, the equities weigh somewhat more heavily in favor of disclosure." Zerilli, 656 F.2d at 714. Accord Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115, 119 (D.D.C. 2002).

Following the D.C. Circuit's establishment of a balancing test in Zerilli, judges of this court have further clarified that the reporter's privilege includes both confidential and nonconfidential information:

> Regardless of whether [the parties seeking discovery] seek confidential or nonconfidential sources, or whether they seek disclosure or verification of statements, [they are] attempting to examine the reportorial and editorial processes. The fact that their purpose is to support, rather than undermine, the bona fides of the

5

> statements as expressed by the reporters makes no difference. Such discovery necessarily implicates the First Amendment interests of the journalists.

NLRB v. Mortensen, 701 F. Supp. 244, 247 (D.D.C. 1998). Accord Hutira, 211 F. Supp. 2d at 121 ("While I am not convinced that vitiating the privilege in a particular case would undermine the news gathering process, I am persuaded that the wholesale abrogation of the privilege for nonconfidential information would have a ripple effect felt beyond any single lawsuit or newspaper article.") (internal citations omitted).

1. Centrality

Goldberg claims that all he knows about the 2002 attack against Saperstein is reflected in the following two sentences that appeared in his New Yorker article: "Two years ago, Saperstein, was ambushed near Kissufim; Palestinian gunfire tore off two fingers of his remaining hand. He had the presence of mind to push down on the accelerator, and struck a Palestinian gunman." Motion to Quash at 8. Goldberg argues therefore that his deposition testimony is neither relevant nor central to Saperstein's case. Id.

Defendants however provide two different rationales for their seeking to depose Goldberg. First, defendants argue that Goldberg's testimony is needed to demonstrate bias. According to defendants, they "subpoenaed Mr. Goldberg for deposition in this matter because Mr. Goldberg had conversations with the Plaintiff both prior to and after the attack at issue which will be admissible at trial to show that the Plaintiff is biased against Defendants, and which the jury in this matter may properly consider in evaluating the Plaintiff's credibility as a witness and his motive for bringing this lawsuit." Defs. Opp. at 2. Defendants later add that they "do not wish to depose Mr. Goldberg to establish the facts surrounding the attack at issue, but to elicit

6

evidence of bias in the form of statements made by the Plaintiff and his wife to Mr. Goldberg." Id. at 16.

Second, defendants argue that because Saperstein, in his deposition, offered a different recollection of the statements attributed to him by Goldberg or outright denied that they were made, defendants should now be able to complete the impeachment of Saperstein by taking Goldberg's deposition. See Defendants' Notice Regarding the Deposition of Moshe Saperstein [#10] at 2-9.

      a.    Bias

Contrary to Goldberg's claim that "testimony about any statements Mr. Saperstein may have made to Mr. Goldberg allegedly suggesting a bias against defendants is manifestly irrelevant, and far from the kind of 'central' testimony going to 'the heart of the matter' required to overcome the reporter's privilege,"[5] evidence of bias is always relevant. As noted by the Supreme Court, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). See also North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 51 (D.D.C. 2005) ("The bias that is relevant, however, is that of a *witness* or *party* in the case, not of an unrelated non-party.") (emphasis added). Given the political nature of Saperstein's claims against defendants, that they engaged in acts of terrorism against Jewish civilians, evidence of his bias may be significant to defendant's impeachment of Saperstein's credibility by establishing that his action against the PA is politically motivated as the acts of a man who despises the PA. See Motion to Quash at

---

[5] Motion to Quash at 10.

Attachment 6 (Third Amended Complaint).

It hardly follows, however, that merely because evidence of Saperstein's bias, obtained through Goldberg's testimony, is admissible that Goldberg's deposition can therefore be compelled. Irrespective of the profession of the intended deponent, discovery even of relevant evidence is subject to the balancing calculus, articulated in Rule 26 of the Federal Rules of Civil Procedure, that measures value against burden. Thus, discovery of relevant evidence will be prohibited if:

1. The evidence is unreasonably cumulative or duplicative.
2. The evidence can be obtained from some other source that is more convenient, less burdensome or less expensive.
3. The party seeking the evidence has had ample opportunity to obtain the information through discovery in the action.
4. The burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The court notes further that there is a curious unreality about defendants' request to explore Saperstein's bias towards defendants. Is some one pretending that Saperstein, while seeming to like the PA, harbors a secret bias against it? It is obvious that Saperstein has strong views about the propriety of Jewish settlements on the West Bank and in Gaza and has all but shouted his views, including his dislike of the PA, from the roof tops. According to Goldberg, in

his deposition, Saperstein stated the following:

1. He referred to Palestians as "Ahmads", a pejorative equivalent to calling a Jew a "Hymie."

2. He described a spokeman for the PA as a suit and tie wearing monkey.

3. He stated that he supported destroying a playground in Gaza, abandoned to the Palestinians, because it was meant originally for Jewish children.

4. He stated that he loved Meir Kahane, an opponent of the peace process who was so truculent in his expression of hatred of the Palestinians that he was expelled from the Knesset.

5. He wrote a letter to Time magazine, in which he questioned why other Jews did not react with respect to the actions of an Israeli who murdered 29 Muslims and wounded another 150 while they were worshiping at a mosque.

6. He stated that he finds the Oslo Accords ("the Accords") offensive because they represented an agreement between Israel and the PA that contemplated the establishment of a Palestinian state in the West Bank and Gaza. He also stated that the Accords represent the abandonment by Israel of land that was meant for the Jews.

7. He stated that there can be no separate states of Israel and Palestine and that the idea of Palestinians having control of Gaza angers him.

Jeffrey Golberg's Response to Defendants' Notice Regarding the Deposition of Moshe Saperstein ("Goldberg's Response") [#11] at 2-3.

Given these statements, and under the balancing calculus required by Rule 26, probing

Goldberg's recollections of other similar conversations with Saperstein will only produce evidence that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Given what Saperstein has already said, it surely is to pile Pilion upon Ossa. Moreover, as Goldberg's points out, no one is challenging the fact that Saperstein was injured in the manner in which he claims. It has been my experience in handling similar cases that the true question presented is how Saperstein will establish that the PA was responsible for the attack,[6] which in turn is likely dependent on expert testimony from a historian, political scientist, or economist who will opine on the PA's complicity in the attack. If my supposition is right, Saperstein's bias will not be an important issue "at stake in the litigation" and discovery from Goldberg about that bias will have little importance. See Fed. R. Civ. P 26(b)(2)(C)(iii).

        b.        <u>Impeachment</u>

With regard to defendants' argument that they should be permitted to take Goldberg's deposition in order to complete Saperstein's impeachment, the fact is that Goldberg has already attested that he truthfully recorded what Saperstein said. See Motion to Quash, Attachment 1 (<u>Declaration of Jeffrey Goldberg</u>) at 2. Taking his deposition to have him repeat that is a waste of everyone's time.

        2.        <u>Exhaustion</u>

Goldberg also argues that defendants could not have exhausted all other sources for this information regarding the attack in 2002. Motion to Quash at 10. Defendants have failed to show that they have "exhausted every reasonable alternative source of information" relating to any negative bias Saperstein and his wife may harbor towards Arabs generally and towards

---

[6] See Motion to Quash at 10-11.

defendants specifically. In his article, Goldberg acknowledges that he and Saperstein were colleagues at the Jerusalem Post. Defs. Opp., Attachment 1 at 2. Given Saperstein's outspoken nature, it is likely that other colleagues in addition to Goldberg were also aware of his views; Saperstein can hardly be accused of keeping them a secret. In addition, Saperstein's own writings are a source of potential evidence regarding his biases. See Reply Memorandum in Support of Non-Party Jeffrey Goldberg's Motion to Quash Subpoena and/or for a Protective Order at 7 n.3 (identifying numerous articles authored by Saperstein about the Israeli-Palestinian conflict). These sources are certainly "more convenient, less burdensome or less expensive"[7] than Goldberg's deposition and exploring them first is preferable to implicating a reporter's First Amendment rights.

3. Journalist as Third Party

It must also be recalled that a more demanding weighing of these factors is imperative when the burden is sought to be imposed upon a third party.[8] This is so whether the third party is a reporter, or a butcher, baker or candlestick maker. When judged by this calculus, and a heightened regard for the burden to be imposed upon a third party, the motion to compel clearly fails.

B. At Common Law

In a footnote, Goldberg argues in the alternative that there is a reporter's or journalists's

---

[7] Fed. R. Civ. P. 26(b)(2)(C)(i).

[8] See, e.g., Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994); Premier Election Solutions, Inc. v. Systest Labs Inc., No. 09-CV-1822, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009); In re: Motion to Compel Compliance with Subpoena Direct[ed] to Dep't of Veteran Affairs, 257 F.R.D. 12, 18 (D.D.C. 2009).

privilege in the common law.  See Motion to Quash at 11 n.7.  That Goldberg chose to discuss the existence of a common law reporter's privilege in a footnote is telling in that the authority cited for such a privilege is Judge Tatel's concurrence in In re Grand Jury Subpoena, Judith Miller, 397 F.3d 964, 986-87 (D.C. Cir. 2005), cert. denied 545 U.S. 1150 (2005).  Concurrences, however, are not binding authority and have no precedential effect.  In any event, having determined above that Goldberg does have a qualified reporter's privilege which defendants have failed to overcome, and that the burden of taking Goldberg's testimony outweighs what little use and significance it might have, the court need not consider further the existence of any such privilege at common law.

## CONCLUSION

Whether one relies on cases pertaining to discovery from reporters or on a simple and straightforward analysis of the factors identified in Rule 26, the case against forcing Goldberg to give his deposition is appreciably stronger than the case for permitting it.  The Motion to Quash will therefore be denied.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE